IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

ROBERT C. LUSK

                Plaintiff,

v.                                        Civil Action No.:

UNITED STATES OF AMERICA,

                Defendant.

## COMPLAINT

Plaintiff ROBERT C. LUSK ("Plaintiff"), by and through his attorneys, Porter Nordby Howe LLP, as and for his Complaint against Defendant UNITED STATES OF AMERICA ("Defendant"), hereby states and alleges as follows:

## NATURE OF THE CASE

1. This action seeks compensatory damages for the severe personal injuries, conscious pain and suffering, and other damages suffered by Plaintiff caused by the negligence, medical malpractice and other wrongful conduct of Defendant, either individually and/or by and through its respective employees, agents and/or representatives, during the period from in or about 2013 through in or about 2020, inclusive.

2. This action is brought against Defendant, and its employees, agents and/or representatives, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680 and 2401(b).

3. Plaintiff asserts this claim as a result of the negligence and medical malpractice committed by Defendant, either individually and/or by its employees, agents and/or representatives

at the Oak Orchard Community Health Center, Inc. ("OOCHC") located in Albion, New York, including, but not limited to, from in or about 2013 through in or about 2020, inclusive.

4. Plaintiff seeks the full extent of relief available to him under the aforementioned acts and laws including, but not necessarily limited to, compensatory damages for his severe personal injuries, his past and future conscious pain and suffering, his past and future medical expenses, other pecuniary and non-pecuniary damages, and such other and further relief that this Court may deem just, proper and equitable.

## PARTIES

5. Plaintiff is an individual who resides in the County of Orleans, State of New York.

6. Defendant is a sovereign government and, by way of the FTCA, is a proper party to this action.

7. From in or about 2013 through in or about 2020 inclusive, Defendant owned OOCHC.

8. From in or about 2013 through in or about 2020 inclusive, Defendant operated OOCHC.

9. From in or about 2013 through in or about 2020, OOCHC represented that it was, and held itself out to be, a medical facility capable of providing competent, adequate and proper medical care and treatment including, but not necessarily limited to, the field of Family Medicine.

10. Keith S. Fuleki, D.O. ("Dr. Fuleki") is an individual, and a Doctor of Osteopathic Medicine duly licensed to practice medicine in the State of New York.

11. Since in or about December, 2015, Dr. Fuleki has been duly licensed to practice medicine in the State of New York.

12. From in or about October, 2016, through in or about 2020, Dr. Fuleki had a place of business and office facility located at OOCHC, 301 West Avenue, Albion, New York 14411.

13. From in or about October, 2016, through in or about 2020, Dr. Fuleki held himself out to the general public as being able to render and furnish competent, adequate and proper medical care and treatment, as a Doctor of Osteopathic Medicine, including in the field of Family Medicine.

14. From in or about October, 2016 through in or about 2020, when Dr. Fuleki rendered medical care and treatment to Plaintiff, Dr. Fuleki was employed by Defendant.

15. From in or about October, 2016, through in or about 2020, when Dr. Fuleki rendered medical care and treatment to Plaintiff, Dr. Fuleki did so within the scope of his employment with Defendant.

16. From in or about October, 2016 through in or about 2020, when Dr. Fuleki rendered medical care and treatment to Plaintiff Dr. Fuleki, Dr. Fuleki was employed by OOCHC.

17. From in or about October, 2016 through in or about 2020, when Dr. Fuleki rendered medical care and treatment to Plaintiff, Dr. Fuleki was employed by OOCHC.

18. Cheryl Kast, PA ("P.A. Kast") is an individual and physician assistant duly licensed to practice medicine as a physician assistant in the State of New York.

19. Since in or about February, 1997, P.A. Kast has been duly licensed to practice medicine as a physician assistant in the State of New York.

20. From in or about October, 2014, through in or about 2020, P.A. Kast had a place of business and office facility located at OOCHC, 301 West Avenue, Albion, New York 14411.

21. From in or about February, 1997, through in or about 2020, P.A. Kast held herself out to the general public as being able to render and furnish competent, adequate and proper medical care and treatment as physician assistant, including in the field of Family Medicine.

22. From in or about October, 2014, through in or about 2020, when P.A. Kast rendered medical care and treatment to Plaintiff, she was employed by Defendant.

23. From in or about October, 2014, through in or about 2020, when P.A. Kast rendered medical care and treatment to Plaintiff, she did so within the scope of her employment with Defendant.

24. From in or about October, 2014, through in or about 2020, when P.A. Kast rendered medical care and treatment to Plaintiff, she was employed by OOCHC.

25. From in or about October, 2014, through in or about 2020, when P.A. Kast rendered medical care and treatment to Plaintiff, she did so within the scope of her employment with OOCHC.

26. Nancy Ciavarri, M.D. ("Dr. Ciavarri") is an individual and physician duly licensed to practice medicine in the State of New York.

27. Since in or about 2001, Dr. Ciavarri has been duly licensed to practice medicine in the State of New York.

28. From in or about July, 2009, through in or about 2020, Dr. Ciavarri had a place of business and office facility located at OOCHC, 301 West Avenue, Albion, New York 14411.

29. From in or about July, 2009, through in or about 2020, Dr. Ciavarri held herself out to the general public as being able to render and furnish competent, adequate and proper medical care and treatment as a physician, including in the field of Family Medicine.

30. From in or about July, 2009 through in or about 2020, when Dr. Ciavarri rendered medical care and treatment to Plaintiff, she was employed by Defendant.

31. From in or about July, 2009, through in or about 2020, when Dr. Ciavarri rendered medical care and treatment to Plaintiff, she did so within the scope of her employment with Defendant.

32. From in or about July, 2009 through in or about 2020, when Dr. Ciavarri rendered medical care and treatment to Plaintiff, she was employed by OOCHC.

33. From in or about July, 2009, through in or about 2020, when Dr. Ciavarri rendered medical care and treatment to Plaintiff, she did so within the scope of her employment with OOCHC.

## JURISDICTION AND VENUE

34. This Court has original subject matter jurisdiction over Plaintiff's claims against Defendant pursuant to 28 U.S.C. § 1346(b)(1), the FTCA, and applicable laws.

35. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

36. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(e)(1)(C) because Plaintiff resided in this District at the time of the injury complained of herein.

37. On or about January 21, 2021, Plaintiff, by and through his legal counsel, properly presented a duly-executed Standard Forms 95 (Claim for Damage, Injury or Death) to the Department of Health and Human Services. Copies of the Standard Form 95 and Addendum are attached hereto as **Exhibit A** (collectively, the "Claim").

38. Plaintiff presented the Claim to Defendant in a timely manner because it was presented to the proper federal agency within two years of the alleged medical malpractice and wrongful conduct.

39. By letter dated on or about March 29, 2021, a copy of which is attached hereto and incorporated herein as **Exhibit B**, Defendant, by and through the U.S. Department of Health and Human Services, acknowledged that Defendant had received Plaintiff's Claim on January 28, 2021.

40. More than six months have passed since Plaintiff presented the Claim, but Defendant has not rendered a decision on the Claim.

41. Based on Defendant's failure to make a final disposition of the Claim within six months after it was presented, Plaintiff has deemed the Claim to be finally denied pursuant to 28 U.S.C. § 2675(a).

42. This action is timely filed because it has been filed within six months after denial of the Claim.

## RELEVANT FACTUAL BACKGROUND

43. On or about March 12, 2012, Plaintiff presented to Dr. Ciavarri at OOCHC, who documented that he was smoking 21 to 30 cigarettes per day.

44. On or about October 6, 2016, Plaintiff presented to Dr. Fuleki at OOCHC for the first time.

45. On or about October 6, 2016, Dr. Fuleki documented Plaintiff's smoking history as 11 to 20 cigarettes per day.

46. In or about October, 2016, through in or about May, 2020, Plaintiff presented to the OOCHC on numerous occasions with complaints of shortness of breath, chronic productive cough, and other respiratory abnormalities.

47. Dr. Fuleki did not order surveillance chest CT scans at any time from in or about October, 2016, through in or about May, 2020.

48. On or about October 30, 2019, Plaintiff presented to Medina Memorial Hospital with complaints of chest pain with associated shortness of breath and nausea.

49. On or about October 30, 2019, Medina Memorial Hospital transferred Plaintiff to the emergency department at UHS Unity Hospital.

50. On or about October 30, 2019, a CT scan performed at UHS Unity Hospital revealed a 1 x 1.5 x 0.9 cm pulmonary nodule in Plaintiff's upper right lobe. The report documented that this finding may be a primary malignancy of the lung.

51. On or about December 2, 2019, Plaintiff presented to OOCHC for follow up from the October, 2019 emergency department visit.

52. On or about December 2, 2019, Dr. Fuleki did not refer Plaintiff for follow up on the upper right lobe pulmonary nodule.

53. On or about March 9, 2020, Dr. Fuleki ordered a LDCT scan after Plaintiff asked about the October, 2019 imaging that had revealed an abnormality on his lung.

54. On or about April 23, 2020, a chest CT scan revealed that the mass in Plaintiff's right upper lung had grown to 1.6 x. 2.4 x 2 cm. In addition, the report documents a new cluster of nodules along the right major fissure within the right upper lobe measuring between 2 to 3 mm, suspicious for metastatic disease.

55. On or about May 19, 2020, the results of the chest CT performed on or about March 9, 2020, were communicated to Plaintiff.

56. On or about May 19, 2020, P.A. Kast ordered a PET scan and biopsy.

57. On or about June 12, 2020, Plaintiff was diagnosed with Stage IV adenocarcinoma of the right lung.

## **FIRST CAUSE OF ACTION**

### **(Medical Malpractice)**

58. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. From in or about October, 2016, through in or about 2020, inclusive, there was a physician-patient relationship between Plaintiff and Dr. Fuleki.

60. From in or about October, 2014, through in or about 2020, inclusive, there was a medical provider-patient relationship between Plaintiff and P.A. Kast.

61.     From in or about July, 2009, through in or about 2020, inclusive, there was a physician-patient relationship between Plaintiff and Dr. Ciavarri.

62.     In rendering medical care and treatment to Plaintiff, Defendant (by and through its employees, agents and/or representatives, where applicable) owed him a duty and responsibility to exercise reasonable care and diligence.

63.     In rendering medical care and treatment to Plaintiff, Defendant (by and through its employees, agents and/or representatives, where applicable) owed him a duty and responsibility to adhere to applicable standards of medical care in the community, and to not deviate or depart from good and accepted medical practice.

64.     Defendant (by and through its employees, agents and/or representatives, where applicable) failed to exercise reasonable care and diligence in rendering care and treatment to Plaintiff.

65.     Defendant (by and through its employees, agents and/or representatives, where applicable) failed to adhere to applicable standards of care in the community, and deviated from good and accepted medical practice, in rendering care and treatment to Plaintiff.

66.     As a direct and proximate result of Defendant's negligent acts and omissions, and medical malpractice, Plaintiff has suffered severe personal injuries and/or damages that include, but are not necessarily limited to, the following: (a) Stage IV lung cancer; (b) metastasis of lung cancer to the lymph nodes; (c) leukocytosis; (d) high risk for recurrence of cancer (and, ultimately, death); (e) generalized muscle pain/body ache; (f) fatigue; (g) past and future emotional distress and mental anguish; (h) past and future loss of enjoyment of life; (i) past and future medical expenses; (j) past and future physical limitations; (k) past and future medical treatment and procedures, and (l) other economic and non-economic injuries and damages.

67.     Plaintiff hereby seeks a judgment and award of compensatory damages as against Defendants on this cause of action in a fair and reasonable amount as may be awarded by the Court, together with such other and further relief as to the Court may seem just and proper.

## SECOND CAUSE OF ACTION

### (Failure to Obtain an Adequate Informed Consent)

68.     Plaintiff repeat and reallege the allegations contained in paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     Average qualified members of the medical profession practicing the specialties of Defendant (by and through its employees, agents and/or representatives, where applicable) knew the potential risks, benefits and consequences of, and the alternatives to, Defendant's choice of treatment of Plaintiff.

70.     Defendant (by and through its employees, agents and/or representatives, where applicable) knew or should have known of the potential risks, benefits and consequences of, and the alternatives to, their choice of care and treatment of Plaintiff.

71.     Defendant (by and through its employees, agents and/or representatives, where applicable) failed to adequately inform and advise Plaintiff of the potential risks, benefits and consequences of, and the alternatives to, their choice of care and treatment.

72.     Defendant (by and through its employees, agents and/or representatives, where applicable) failed to adequately explain to Plaintiff the alternatives that were available to him.

73.     If Defendant (by and through its employees, agents and/or representatives, where applicable) had adequately informed and advised Plaintiff of the potential risks, benefits and consequences of, and the alternatives to, their choice of care and treatment, neither Plaintiff, nor a reasonable person in his position, would have elected Defendant's choice of care and treatment.

74.     The potential risks, benefits and consequences of, and the alternatives to, Defendant's choice of care and treatment were material to a decision by Plaintiff and would have been material to any reasonable person in his position, as to whether to follow Defendant's choice of care and treatment.

75.     The medical care and treatment rendered and afforded by Defendant (by and through its employees, agents and/or representatives, where applicable) to Plaintiff was rendered without first obtaining an adequate, informed consent.

76.     As a direct and proximate result of Defendant's failure to obtain an adequate informed consent, Plaintiff has suffered severe personal injuries and/or damages that include, but are not necessarily limited to, the following: (a) Stage IV lung cancer; (b) metastasis of lung cancer to the lymph nodes; (c) leukocytosis; (d) high risk for recurrence of cancer (and, ultimately, death); (e) generalized muscle pain/body ache; (f) fatigue; (g) past and future emotional distress and mental anguish; (h) past and future loss of enjoyment of life; (i) past and future medical expenses; (j) past and future physical limitations; (k) past and future medical treatment and procedures, and (l) other economic and non-economic injuries and damages.

77.     Plaintiff hereby seeks a judgment and award of compensatory damages as against Defendants on this cause of action in a fair and reasonable amount as may be awarded by a jury of his peers, together with such other and further relief as to the Court may seem just and proper.

**THIS SPACE INTENTIONALLY LEFT BLANK**

**WHEREFORE**, Plaintiff hereby demands judgment as against Defendant on each cause of action, in a fair and reasonable amount as may be awarded by the Court, together with such other and further relief as to the Court may seem just and proper, including interest, costs and disbursements of this action to the fullest extent permitted by law.

DATED:  October 25, 2021

PORTER NORDBY HOWE LLP
*Attorneys for Plaintiff*

By: _____
Michael S. Porter, of Counsel (512707)
Mary E Langan, of Counsel (517442)

Office & P.O. Address
125 East Jefferson Street, 11th Floor
Syracuse, New York 13202-2550
315.477.9900
315.477.9923 (facsimile)

**FAX SERVICE NOT ACCEPTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

ROBERT C. LUSK

                Plaintiff,

v.

UNITED STATES OF AMERICA,

                Defendant.

Civil Action No.:

## CERTIFICATE OF MERIT UNDER N.Y. CPLR § 3012-a

I, MARY E. LANGAN, under penalties of perjury, hereby affirm as follows:

1. I am an attorney duly licensed to practice law in the State of New York, and I am one of the attorneys for Plaintiff in the above action.

2. I have reviewed the facts of the case and have consulted with at least one physician who is licensed to practice in this State or another State, whom I reasonably believe is knowledgeable in the relevant issues involved in this action.

3. I have concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action.

DATED: October 25, 2021

_____
MARY E. LANGAN